IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JOY GAY SALAZAR                                                                        PLAINTIFF


            v.                                    CASE NO.         12-3139


CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                                                      DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision

of the Commissioner of Social Security Administration (Commissioner) denying his claim for a

period of disability and disability insurance benefits (DIB) and supplemental security income

("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial

review, the court must determine whether there is substantial evidence in the administrative

record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

### I.  Procedural Background:

The plaintiff filed an applications for DIB on November 5, 2009 (T. 121) & SSI  on

November 13, 2009 (T. 123) , alleging an onset date of January 2, 2006[2], due to DeQuerves (sic

De Quervain's) Disease[3], Elbow pain, anxiety and stress, obesity, carpal tunnel, fatigue,

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

[2]Plaintiff's attorney moved to amend the onset date to August 7, 2009 during the hearing (T.34) and the Disability Report of November 2009 shows a disability onset of August 7, 2009. (T. 188)

[3]De Quervain syndrome is stenosing tenosynovitis of the short extensor and long abductor tendon  of the thumb within the first extensor compartment. http://www.merckmanuals.com.

insomnia, and fibromyalgia. (T. 187).  Plaintiff's applications were denied initially and on

reconsideration.  Plaintiff then requested an administrative hearing, which was held on February

16, 2011.  Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 41 years of age and possessed a

High School Education.  The Plaintiff  had past relevant work ("PRW") experience as a

production line worker, file clerk, and cashier.  (T. 189).

On April 27, 2011, the Administrative Law Judge ("ALJ") concluded that, although

severe, plaintiff's DeQuervain's syndrome, fibromyalgia, obesity, and mood disorder did not

meet or equal any Appendix 1 listing.  T. 17.  The ALJ found that plaintiff maintained the

residual functional capacity ("RFC") to perform sedentary work with additional restrictions.  T.

19.  With the assistance of a vocational expert, the ALJ then determined Plaintiff could  perform

the requirements of representative occupation such as  document preparer, addresser, and escort

driver.  T. 23.

## II.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by

substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

Substantial evidence is less than a preponderance, but enough that a reasonable mind would find

it adequate to support the Commissioner's decision.  *Id.*  "Our review extends beyond examining

the record to find substantial evidence in support of the ALJ's decision; we also consider

evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial

evidence in the record to support the Commissioner's decision, the court may not reverse the

decision simply because substantial evidence exists in the record to support a contrary outcome,

or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.  *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.  Discussion:

The court has reviewed the Briefs filed by the Parties, the Transcript of the proceedings before the Commission, including a review of the hearing before the ALJ, the medical records, and relevant administrative records and finds the ALJ's decision is supported by substantial

evidence.

## A. Development of the Record

The ALJ found, inter alia, that the Plaintiff's "mood disorder" was severe (T. 16) and he sought to accommodate this impairment in her RFC by providing that she could only "do work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote with few variables and little judgment involved, and supervision is simple, direct, and concrete." (T. 18-19).

The ALJ has a duty to fully and fairly develop the record.  *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exist "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) *(quoting Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983)).  The ALJ is not required to act as Plaintiff's counsel. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) (ALJ not required to function as claimant's substitute counsel, but only to develop a reasonably complete record); *see also Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").

It is incumbent upon the ALJ to establish by medical evidence that the claimant has the requisite RFC.  If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record.  *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984). The ALJ in this case did not seek any consultive evaluation by a psychologist to determine the limitations on functioning that the Plaintiff's mood disorder might have, nor did he obtain a Mental RFC

-4-

assessment by a consultive evaluation.  The court must determine if this failure is unfair or prejudicial.

The ALJ noted that the Plaintiff only sought a mental health evaluation at Ozark Guidance, Inc. in July 2007 at the instruction of her attorney because she was seeking disability. (T. 304). The Eight Circuit has repeatedly held that visiting doctors in order to receive benefits does not support a finding of disability. *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995) (holding that the plaintiff's encounters with doctors appeared to be linked primarily to quest to obtain benefits, rather than to obtain medical treatment).

The Plaintiff was diagnosed by Ozark Guidance in July 2007 with Generalized Anxiety Disorder and Depressive Disorder and her Global Assessment of Functioning was 50. (T. 304). Ozark Guidance records show that the Plaintiff "was seen for one individual session following her intake, but didn't return." (T. 302). *Banks v. Massanari*, 258 F.3d 820, 825-26 (8th Cir.2001) (ALJ properly discounted claimant's complaints of disabling depression as inconsistent with daily activities and failure to seek additional psychiatric treatment).  It is also significant that no doctor has prescribed any medication to the Plaintiff for her depression or anxiety and the Plaintiff sought no treatment.

To the extent that the Plaintiff contends she did not have funds to seek additional treatment the court finds this to be without merit. *See Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir.1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty).

In addition, the ALJ considered Plaintiff's activities of daily living, noting that her mild

limitations in this area derived mostly from her physical impairments (Tr. 17). Further, the ALJ found that Plaintiff had only mild difficulties in the area of social functioning, noting that she shops for groceries and works 15-20 hours a week at McDonalds, a job that requires dealing with people (Tr. 18, 166, 218).

There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Battles v. Shalala*, 36 F.3d 43 at 45 (C.A.8 (Ark.), 1994). In this case the court finds that any error in failing to develop the record to obtain a consultive psychiatric evaluation was harmless.

**B. Residual Functional Capacity**

The ALJ determined that the Plaintiff had the RFC to perform sedentary work[4] except that she "can only occasionally climb, balance, crawl, kneel, stoop, and crouch" and that she could "frequently, but not continuously, engage in rapid repetitive flexion and extension of the writs." (T. 18). The ALJ also found the Plaintiff had mental limitations as discussed above. (Id.).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating

---

[4]Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary when carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a).

physicians and others, and the claimant's own descriptions of her limitations.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."  *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing  Lauer v. Apfel, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

### 1.  Credibility

In determining a claimant's RFC, " 'the ALJ must first evaluate the claimant's credibility.' " *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir.2007) (*quoting Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2002)). Assessing and resolving credibility issues is a matter that is properly within the purview of the ALJ. *Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996) (court will not substitute its own credibility opinion for that of the ALJ).  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to

decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  The court should , " defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Perks v. Astrue*  687 F.3d 1086, 1091 (C.A.8 (Ark.),2012). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004).

There was no objective medical test that validated the Plaintiff's disabling pain. In July 2007 x-rays of both wrist showed "no signs of fractures, dislocations, or effusions"  (T. 289) and in 2010 x-rays of both knees were normal (T. 345). The lack of an objective medical basis to support a claimant's subjective complaints can be considered in evaluating a claimant's credibility. *Polaski*, 739 F.2d at 1322; *Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir.2002).

The Plaintiff had originally claimed she was disabled on January 2, 2006 (T. 121) but amended the onset date to August 7, 2009 (T. 182) the day after she was previously denied benefits. (Id.). In the 3rd and 4th Quarter of 2009 the Plaintiff earned $3,049 while working for TMAC Foods Inc. (T. 151) and $3720 in the 2nd and 1st Quarter of 2009. (T. 152-151). Her earnings after the alleged disability date were as great as her earnings before her disability date. In *Johnson v. Apfel*, 240 F.3d 1145, 1148-49 (8th Cir.2001), the court stated "[a]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Absent a showing of deterioration, working after the onset of  an impairment is some evidence of an ability to work. *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir.2005).

In addition, the ALJ noted that Plaintiff cared for her dogs, worked 4-5 hour shifts at McDonalds, and did some housework, such as laundry and dishes (Tr. 21, 36, 215-217).  The court also notes that the Plaintiff cares for her 12 year old daughter (T. 215), prepares meals (T.

-8-

217), can drive a car and does shopping (T. 218), her hobby is watching TV (T. 219),  and that she could walk for one hour (T. 220). These activities do not support plaintiff's claim of disability.   *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).

The Plaintiff sought no treatment for her alleged mental impairment.  It is true that, "[w]hile not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir .1995). *Banks v. Massanari*, 258 F.3d 820, 825-26 (8th Cir.2001) (ALJ properly discounted claimant's complaints of disabling depression as inconsistent with daily activities and failure to seek additional psychiatric treatment).

This court concludes that, as a result of an independent review of the record, and because the ALJ gave several valid reasons, the ALJ's credibility determination is entitled to deference, *see Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir.2012).

### 2.  RFC Determination

The Plaintiff sought no treatment between the time she was last denied benefits (August 6, 2009; T. 35, 182) and when she reapplied for disability on August 7, 2009, nor did she seek

any treatment after her application and no treating physician ever indicated that she was unable to work for any 12-month period within the time encompassed by her alleged disability. *See Anderson v. Shalala* 51 F.3d 777, 780 (C.A.8 (Iowa),1995). See *Benskin v. Bowen*, 830 F.2d 878, 884 (8th Cir. 1987) (upholding ALJ's consideration of claimant's failure to seek medical attention where claimant's measures to relieve pain were not indicative of severe, disabling pain).

With no subsequent medical records the ALJ order a Consultive Physical exam which was conducted on March 24, 2010.  The physical exam determined that the Plaintiff had a normal range of motion except in the knees (T. 328), no neurological deficits, she could hold a pen, squat and rise from squatting position, and had normal grip, except that she exhibited some pain with these functions. (T. 329).  All other test were normal. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir.2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled).

On April 20, 2010, Dr. Alice Davidson, MD, provided a Physical RFC Assessment finding that the Plaintiff could lift 20 pounds Occasionally, 10 pounds Frequently, and that she could stand and/or walk, and sit for about six hours in an 8-hour workday. (T. 337). Dr. Davidson found no limitations on the Plaintiff's ability to Push and/or Pull (T. 337), no Postural Limitations (T. 228), and no Manipulative Limitations (T. 339). Dr. Davidson's findings were reviewed and affirmed by Dr. Bill Payne, MD. on June 1, 2010. The ALJ properly discounted the opinions of a consulting physicians in evaluating the Plaintiff's RFC. *Charles v. Barnhart*, 375 F.3d 777, 783 (8th Cir.2004) (generally when consulting physician examines claimant only once,

his opinion is not considered substantial evidence)

The Eighth Circuit Court of Appeals has upheld the Commissioner's RFC assessment in cases where the ALJ did not rely on a treating physician's functional assessment of the claimant's abilities and limitations. *See Page v. Astrue*, 484 F.3d at 1043 (the medical evidence, state agency physician opinions, and claimant's own testimony were sufficient to determine RFC); *Stormo v. Barnhart*, 377 F.3d 801, 807-08 (8th Cir. 2004) (medical evidence, state agency physicians' assessments, and claimant's reported activities of daily living supported RFC finding); *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004) (ALJ's RFC assessment properly relied upon assessments of consultative physicians and a medical expert, which did not conflict with the treating physician's records).

The court finds in this instance that the ALJ properly considered all of the evidence in determining the Plaintiff's RFC.

**C.  Hypothetical Question**

Testimony from a vocational expert ("VE") based on a properly-phrased hypothetical question constitutes substantial evidence.  *See Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir. 1996); cf. *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994) (when hypothetical question does not encompass all relevant impairments, VE's testimony does not constitute substantial evidence to support the ALJ's decision). The ALJ's hypothetical question needs to "include only those impairments that the ALJ finds are substantially supported by the record as a whole."  Id. (citing *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir.1993)); see also *Morse v. Shalala*, 32 F.3d 1228, 1230 (8th Cir.1994).   A hypothetical need not use specific diagnostic or symptomatic terms where other descriptive terms can adequately define the claimant's impairments. *Roe v. Chater*,

92 f.3d 672, 676 (8th Cir. 1996).

The court finds that the ALJ's first hypothetical (T. 268) to the vocational expert (VE) accounted for all of Plaintiff's proven impairments. S*ee Buckner v. Astrue*, 646 F.3d 549, 560–61 (8th Cir.2011) (VE's testimony constitutes substantial evidence when it is based on hypothetical that accounts for all of claimant's proven impairments; hypothetical must include impairments that ALJ finds substantially supported by record as a whole).

### IV.  Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated  this March 21, 2014.

*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE